RADIO SHACK CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 27971.    Promulgated January 28, 1953.

*George B. Lourie, Esq.,* and *Arnold R. Cutler, Esq.,* for the petitioner.

*John B. King, Esq.,* and *William J. Stetter, Esq.,* for the respondent.

OPINION.

RAUM, *Judge:* It is admitted by the Commissioner that the petitioner qualifies for relief under section 722 (b) (4) of the Code and is therefore entitled to reconstruct its average base period net income so as to reflect more clearly its normal earnings. The Commissioner has allowed a constructive average base period net income in the amount of $9,000 for the fiscal year ended June 30, 1941, and $12,000 for the fiscal years ended June 30, 1942, 1943, 1944, 1945, and 1946. Petitioner contends that this is inadequate and has appealed to this Court.

Petitioner has undertaken to establish by several reconstructions that its constructive average base period net income is an amount "not less than $24,500 to $26,972." However, we are unable to accept these reconstructions. Petitioner's accountant, who was its main witness in this connection, plainly relied in large part upon facts that he was not entitled to take into account or upon unsupported assumptions.

According to the evidence, petitioner's mail order and industrial business did not appear to be more than a relatively small portion of

its total business at the end of 1939. But the basic assumption of the accountant's principal reconstructions was that if the qualifying changes had taken place 2 years earlier, petitioner's mail order and industrial business would have increased to such an extent as to constitute 60 per cent of its total business by the end of 1939. Accordingly, after making certain other adjustments and computations with respect to petitioner's actual base period earnings (which he treated as being allocable solely to its cash business), he increased those earnings by 150 per cent, so that such earnings prior to the increase would constitute 40 per cent of the new figure. The remaining 60 per cent of the new figure he treated as being allocable to the mail order and industrial business, which he assumed would have attained such magnitude had it been started 2 years earlier.

However, the difficulty with the foregoing assumption is that there is no reliable or competent evidence in the record before us to support it. True, Milton Deutschmann testified that such, in his opinion, would have been the growth of the mail order and industrial business. But we are satisfied that such testimony was merely an extravagant guess that was not founded on any facts that could properly be taken into account. Indeed, his testimony strongly suggests to us that he based it primarily upon the actual relationship between petitioner's cash business and its mail order and industrial business as of the years 1947, 1948, and 1949.[1] Surely, taking such facts into account flies in the face of the explicit injunction in section 722 (a) that in determining the constructive average base period net income "no regard shall be had to events or conditions affecting the taxpayer * * * occurring or existing after December 31, 1939 * * *."[2] Moreover, the situation as it existed in the years 1947–1949 may well have depended upon economic or other conditions prevailing in those years. We have no reason whatever to assume that a similar relationship between petitioner's various classes of business would have been the norm in the base period. And finally, the 1947–1949 situation reflects not 2 years of additional experience, as contemplated by section 722 (b) (4), but rather some 8 to 10 years of development.

Petitioner also proposed to support a reconstruction of its earnings by comparison with the Boston branch store of another company, Wholesale Radio Service Co., Inc., known as "Lafayette Radio." However, that store did no mail order or industrial business, such

[1] Petitioner asserts that Deutschmann's opinion was a contemporaneous estimate and that reference to the years 1947–1949 was merely for confirmation. We are not convinced that such is the fact; and we are satisfied, on the basis of the testimony which we heard, that Deutschmann's estimate was predicated largely upon the 1947–1949 experience.

[2] The proposed reconstruction contained in petitioner's applications for relief (Form 991) for the fiscal years ended June 30, 1941, 1942, and 1943 was based to a large extent on other post-1939 data and is therefore equally unacceptable under section 722 (a) of the Code. The proposed reconstruction in the applications for relief for the remaining fiscal years, ending in 1944, 1945, 1946, was abandoned by petitioner in its brief.

business being handled by the main store in New York. Petitioner attempted to equate the operations of Lafayette Radio with its own by allocating arbitrarily additional sales of $100,000 for mail order and industrial business to the Boston operations of Lafayette Radio, and it assumed that the net profit on the composite of all such operations would be 7 per cent of its gross income. To be sure, there was testimony by a former employee of Lafayette Radio, based on his experience with that organization, that 7 per cent of gross income was a normal net profit for that type of business in 1939. But there is grave doubt on this record whether such ratio would have been the same for Radio Shack. The Lafayette store was part of a national organization whose buying power and management may well have placed it in a position superior to that of petitioner. Furthermore, the 7 per cent figure must be contrasted with Radio Shack's actual net profits for its last base period year, which were less than 1 per cent of its gross sales.

It is true that in determining relief under section 722, a reconstruction must be based to some extent on hypothesis and conjecture. The nature of the problem requires the use of some imagination and practical judgment. But there must be facts upon the basis of which such judgment can be exercised. And it is our conclusion that petitioner has not established a sufficiently acceptable foundation for the reconstructions that it asks this Court to approve.

On the other hand, we are satisfied on the record as a whole that the relief granted by the respondent is inadequate. Using our best judgment on the entire record, we have found as a fact and conclude that petitioner's constructive average base period net income is $15,000 for each of the years involved, except the fiscal year ended June 30, 1941, which is involved herein only for the purpose of carry-over, and for which we have determined a constructive average base period net income of $11,000. The fiscal year ended June 30, 1941, did not represent a full year's operations at the level that petitioner would have attained had it made its changes 2 years earlier. Accordingly, in granting relief the Commissioner applied the so called variable credit rule (Regulations 112, section 35.722–3 (d), as amplified by Bulletin on Section 722, pp. 120–123). Upon the facts here presented we are satisfied that this is an appropriate case for the application of the variable credit rule. Petitioner's principal contention in this regard is that the variable credit rule is invalid. However, the validity of the regulations has been sustained in *Nielsen Lithographing Co.*, 19 T. C. 605, and that decision is controlling in this case. Applying the variable credit rule here we have found that the constructive average base period net income for the fiscal year ended June 30, 1941, is $11,000.

Reviewed by the Special Division.

*Decision will be entered under Rule 50.*